## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHEERAZ MOHAMMED AZEEZ**, Plaintiff, v. **SEAN MURPHY**, Chargé d'Affaires, U.S. Embassy in the United Arab Emirates, *et al.*, Defendants. | Case No. 23-cv-1947 (CRC) |

## MEMORANDUM OPINION

In September 2019, Sheeraz Mohammed Azeez filed I-130 relative visa petitions on behalf of his parents, who reside in the United Arab Emirates ("UAE"). Nearly five years later, those petitions remain pending. Though his parents received an interview at the U.S. Embassy in the UAE in February 2023, their applications were initially "refused" and placed into "administrative processing." Mr. Azeez has filed suit against the Chargé d'Affaires of the U.S. Embassy in the UAE, Sean Murphy, and the U.S. Secretary of State, Anthony Blinken, in their official capacities. Azeez seeks to compel the defendants to decide the petitions conclusively, contending that the government has unreasonably delayed their adjudication and that its inaction violates his rights under the Due Process Clause. In response, the government has moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Because Azeez has not plausibly alleged that the delay in adjudicating his parents' visa applications is unreasonable, or that he has a constitutionally protected interest in their adjudication, the Court will grant the government's motion and dismiss the case.

## I.    Background

The Court draws the following background from the allegations in the Petition for Writ of Mandamus and Complaint for Injunctive Relief ("Compl.").

Mr. Azeez is a U.S. citizen who resides in Hartford, Connecticut, with his wife and son. Compl. ¶¶ 8, 11.  His parents, Nawal Khaloo and Mohammed Azeez Mohammed, live in the UAE.  See id. ¶ 20.  In September 2019, Azeez filed two Form I-130 relative visa petitions on his parents' behalf, seeking to obtain lawful permanent resident status for them to join him in the United States.  Id. ¶¶ 2, 19.  The United States Citizenship and Immigration Services approved those petitions in May 2020, and a consular officer at the U.S. Embassy in the UAE interviewed Khaloo and Mohammed in February 2023.  Id. ¶¶ 18, 20.  After the interview, the officer notified Azeez's parents that the petitions had been designated as "refused" while the State Department gathered additional information.  Id. ¶¶ 21–22.  Since then, Azeez has requested an update regarding the applications on "numerous occasions" but received "no meaningful responses."  Id. ¶ 23.  Azeez contends that he, his parents, and his family have suffered from "significant personal, financial, and emotional hardship" due to the delay.  Id. ¶ 6.

Five months after the interview, in July 2023, Azeez sued the Chargé d'Affaires of the U.S. Embassy in the UAE, Sean Murphy, and the U.S. Secretary of State, Anthony Blinken, in their official capacities.  Id. ¶¶ 12–13, 20.  He contends that the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1202(b), 1153(a), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b), require the defendants to timely adjudicate his petitions and seeks an order compelling them to do so pursuant to APA § 706(1) and the Mandamus Act, 28 U.S.C. § 1361 (Counts 1 & 2).  See Compl. ¶¶ 25–35.  He also brings a claim under the Due Process Clause, asserting that he "has a statutorily created entitlement to adjudication of his parents' visa applications[,]"

which the government has deprived him of without due process (Count 3).  Id. ¶ 38.  The

defendants have moved to dismiss the complaint for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).  Mot.

Dismiss at 1.

## II.   Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court

"must treat the complaint's factual allegations as true[] and must grant plaintiff the benefit of all

inferences that can be derived from the facts alleged."  Giliana v. Blinken, 596 F. Supp. 3d 13,

17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113

(D.C. Cir. 2000)).  However, a court need not accept inferences drawn by the plaintiff that are

unsupported by facts alleged in the complaint nor accept a plaintiff's legal conclusions as true.

Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Under Rule 12(b)(1), the plaintiff

bears the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v.

Defs. of Wildlife, 504 U.S. 555, 561 (1992).  But on a 12(b)(6) challenge, the defendant bears

the burden, and "dismissal is inappropriate unless the 'plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.'"  Browning, 292 F.3d at 242 (citation

omitted).

## III.   Analysis

The government advances five arguments in support of its motion to dismiss: (1) the

Secretary of State is an improper party; (2) the doctrine of consular nonreviewability bars

judicial review of the delay; (3) the complaint fails to identify a discrete nondiscretionary duty

on the part of the defendants; (4) the delay has not been unreasonable; and (5) the complaint fails

to state a violation of the Due Process Clause.  See Mot. Dismiss at 3–25.  The Court addresses each in turn.

### 1. *Improper Defendant*

The government first contends that Secretary of State Blinken must be dismissed because "the Secretary cannot adjudicate an application for a visa" and therefore "cannot provide the relief requested." Mot. Dismiss at 3.[1]  As it has in the past, the government supports this contention with Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020 (D.C. Cir. 2021), where the D.C. Circuit considered a final visa determination and held that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" Id. at 1024 (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  But "[c]ontrol over a consular officer's visa *determinations* . . . is not the same as control over the *timing* by which the consular officer considers the applications presented to her." Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 10 (D.D.C. 2022).  Indeed, "[c]ourts in this jurisdiction routinely reject the same argument that Defendants have raised here." Fakhimi v. Dep't of State, No. 23-CV-1127 (CKK), 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); see also, e.g., Ramirez v. Blinken, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) (Cooper, J.); Lee v. Blinken, No. 23-CV-1783 (DLF), 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024); Babaei v. U.S. Dep't of State, No. 23-CV-1244 (TJK), 2024 WL 1178453, at *4 (D.D.C. Mar. 19, 2024).  Because the Secretary of State "oversees [the Department of State], which is responsible for adjudicating visa applications," and an order from this Court "[m]andating that Defendants process Plaintiff's parents' visa

---

[1]  Though the motion to dismiss does not specify the grounds for dismissal, the Court interprets this argument as a challenge to Azeez's standing to sue the Secretary of State.

applications . . . as soon as reasonably possible" would redress Azeez's claimed injuries from the allegedly unreasonable delay, he has standing to pursue this claim against the Secretary.  Compl. ¶¶ 13, 41(b).

> ### 2.   *Consular Nonreviewability*

Pointing again to <u>Baan Rao</u>, the government next contends that dismissal is required on the merits because the doctrine of consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review."  985 F.3d at 1024.  As the government points out, the Supreme Court has recently reaffirmed this position in <u>Dep't of State v. Muñoz</u>, 144 S. Ct. 1812, 1820 (2024).  <u>See</u> 1st Notice of Supp. Auth., ECF No. 8, at 1.  But <u>Baan Rao</u> and <u>Muñoz</u> do not control this case.  Azeez does not challenge "the action of an executive officer 'to admit or to exclude a [noncitizen],'" <u>Muñoz</u>, 144 S. Ct. at 1820 (citation omitted), or even the decision to refuse his petitions and initiate administrative processing.  Instead, he contends that the agency has unreasonably delayed the completion of administrative processing.  As the government acknowledges, "the basis for Plaintiff's challenge is not final agency action, but rather agency inaction."  Mot. Dismiss at 22 n.3.  And as the Court has concluded in the past, the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance. <u>See</u> <u>Didban v. Pompeo</u>, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (Cooper, J.); <u>Giliana</u>, 596 F. Supp. 3d at 18–19; <u>Ramirez</u>, 594 F. Supp. 3d at 87.

The government argues for the first time in its reply brief that "nothing in any statute, regulation, or binding judicial authority limits the doctrine of consular non-reviewability to 'final' decisions."  Reply at 2.  As an initial matter, "[a]rguments raised for the first time in a reply brief are waived."  <u>Nippon Shinyaku Co., Ltd. v. Iancu</u>, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019), <u>aff'd</u>, 796 F. App'x 1032 (Fed. Cir. 2020).  And the Court would reject this

contention in any case.  The doctrine of consular nonreviewability exists to "protect[] the prerogative of the political branches to regulate the manner in which aliens may enter the United States."  Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) (citing Saavedra Bruno, 197 F.3d at 1159). "When the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all."  Id. at 290–91.

In a subsequent filing, the government alternatively suggests that, under the D.C. Circuit's recent unpublished opinion in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), a consular officer's refusal of an application is a "final" decision.  See 2nd Notice of Supp. Auth., ECF No. 10, at 2–3 (quoting Karimova, 2024 WL 3517852, at *3).  In Karimova, the D.C. Circuit did state that such a refusal "conclude[s]" a matter within the meaning of 5 U.S.C. § 555(b), 2024 WL 3517852, at *4, but it expressly reserved "decid[ing] whether th[e] principle of nonreviewability applie[d]."  Id. at *6.  More importantly, nothing in Karimova rejects the conclusion that the doctrine of consular nonreviewability applies to challenges based on substance, not timing.  Therefore, because Azeez contests an alleged delay rather than a substantive decision, the doctrine of consular nonreviewability poses no bar to the Court's review.

### 3. Discrete Action Requirement

The government next contends that Counts 1 and 2 of the complaint fail to state a claim for unreasonable delay under the APA or the Mandamus Act.  See Mot. Dismiss at 8–22.  "The standards for reviewing agency inaction—including visa processing delays—are the same under the APA and Mandamus Act," so the Court will address both claims together.  Akrayi v. U.S.

Dep't of State, No. 22-CV-1289 (CRC), 2023 WL 2424600 (D.D.C. Mar. 9, 2023).  "To state a claim for unreasonable delay, [a plaintiff] must first allege that the agency 'failed to take a discrete agency action that it is required to take,' and, second, that the delay was unreasonable[.]"  Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (internal citations omitted).

Because Azeez "fails to allege an unreasonable delay as a matter of law, the Court will assume, without deciding, that the State Department has a non-discretionary, discrete duty to adjudicate [Azeez's] visa application."  See Baygan v. Blinken, No. 23-CV-2840 (JDB), 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024) (citing Rostamnia v. Blinken, No. 23-CV-1638 (RDM), 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024)).  The Court is mindful of Karimova, which held that § 555(b) of the APA *alone* was too "general[] and indistinct[]" to establish such a "crystal-clear legal duty" on behalf of the government.  Id. at *3–4 (quoting In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022)).  Azeez, however, also invokes more specific provisions in the INA—namely, 8 U.S.C. §§ 1202(b) and 1153(a), Compl.  ¶¶ 25, 32— as the source of the duty "to either issue . . . a visa or refuse [the] application, without then also placing it in administrative processing," Karimova, 2024 WL 3517852 at *3.  The Court need not decide whether the INA imposes this duty because, either way, Azeez has not plausibly alleged that the delay in adjudicating his parents' visa applications is unreasonable.  See Baygan, 2024 WL 3723714, at *5.

### 4.  Unreasonable Delay

To evaluate whether the delay in this case is unreasonable, the Court applies the familiar six-factor test established by Telecommunications Research & Action Center v. Federal

Communications Commission ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984).  Under the

TRAC test, courts must balance the following considerations:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting

TRAC, 750 F.2d at 80).

"In analyzing a motion to dismiss, courts apply the TRAC factors not to 'determine[e]

whether there has been an unreasonable delay,' but to determine if a plaintiff's complaint

'alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'"

Varghese v. Blinken, No. 21-CV-2597 (CRC), 2022 WL 3016741, at *4 (D.D.C. July 29, 2022)

(alteration in original) (quoting Jingjing Liu v. Mayorkas, No. 20-CV-654 (CRC), 2021 WL

2115209, at *3 (D.D.C. May 25, 2021)).  While Azeez contends that resolving this case at the

motion to dismiss stage is inappropriate, Opp'n at 21–22, "[t]here is no categorical prohibition

on deciding unreasonable-delay claims at the motion-to-dismiss stage."  Da Costa v. Immigr.

Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023).

"If a 'record contains enough facts to evaluate the TRAC factors' at that point, then a Court may

appropriately decide to do just that." Id. (quoting Sarlak v. Pompeo, No. 20-CV-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)).  Applying the TRAC factors here, the Court determines that the complaint does not plausibly allege an unreasonable delay.  Factors one, two, and four favor the defendants, factor six is neutral, and factors three and five, while favoring Azeez, do not overcome the others.

a.  TRAC Factors One and Two

The Court begins with factors one and two:  "(1) whether the response time is governed by a rule of reason, as informed by (2) any congressional timetable."  Giliana, 596 F. Supp. 3d at 20.  The first factor is "most important" to the TRAC analysis, In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008), though the two are "typically considered together," Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  The parties agree that Congress has not prescribed a statutory deadline for processing I-130 petitions.  See Mot. Dismiss at 17; Opp'n at 27.  When Congress provides no timetable, courts look to relevant case law to provide a rule of reason.  See Sarlak, 2020 WL 3082018, at *6 ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide.").  In this district, "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  Id. (citations omitted) (collecting cases).  And in assessing the length of a delay, the Court "calculate[s] the delay 'from the last Government action to the issuance of the opinion.'"  Varghese, 2022 WL 3016741, at *5 (quoting Mahmood v. U.S. Dep't of Homeland Sec., No. 21-CV-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)).  Taken together, these factors favor the government.

The seventeen-month delay in processing Azeez's petitions since his parents' interview in February 2023 is comparable to the delays deemed reasonable for other I-130 petitioners.  See

Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding 29 months of "administrative processing" not unreasonable); Mahmood, 2021 WL 5998385, at *7–8 (finding that a 25-month delay in scheduling an interview was not unreasonable); Akrayi, 2023 WL 2424600, at *3 (finding an almost three-year delay in the "range of reasonableness").  Moreover, "[e]ven if the Court started the clock when [Azeez] *filed* the petition[s] five years ago, 'several of this district's courts have noted that delays between three to five years are often not unreasonable.'"  Dastagir, 557 F. Supp. 3d at 165 (emphasis added) (quoting Mirbaha v. Pompeo, 513 F. Supp. 3d 179, 186 (D.D.C. 2021)); see also Varghese, 2022 WL 3016741, at *5 (finding that the four-year total processing time "still would not warrant judicial intervention, standing alone").  While the Court does not minimize the burden of this delay, it is not unreasonable as a matter of law.

### b.  TRAC Factor Four

The fourth TRAC factor also favors the government, as "a judicial order" putting Azeez's parents' applications "at the head of the queue," as he requests, would "move[] all others back one space and produce[] no net gain."  See In re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991); see also Mot. Dismiss at 19–21.  This factor is significant, given that the Circuit has "refused to grant relief" in these circumstances, "even [where] all the other factors considered in TRAC favored it[.]"  Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  Azeez pushes back on this characterization of his petition, stating that "[t]here is little to no evidence that the final adjudication of the visa for [his] parents would in any way hinder or harm [the government's] consular operations or other applicants."  Opp'n at 28.  But while it may be true that the effect of one individual application jumping the line "would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of

the line would erode the ability of agencies to determine their priorities." Tate v. Pompeo, 513

F. Supp. 3d 132, 150 (D.D.C. 2021).  And where, as here, "[t]he agency is in a unique—and

authoritative—position to view its projects as a whole, estimate the prospects for each, and

allocate its resources in the optimal way," there is "no basis for reordering agency priorities."  In

re Barr Lab'ys, 930 F.2d at 76; see also Arab v. Blinken, 600 F. Supp. 3d 59, 71 (D.D.C. 2022)

("[D]eference must be given to the State Department's priority-setting and resource-allocation

decisions.") (collecting cases).

### c.  TRAC Factor Six

The sixth TRAC factor is neutral, given that Azeez does allege any bad faith in his

complaint and "the court need not find any impropriety lurking behind agency lassitude in order

to hold that agency action is unreasonably delayed."  TRAC, 750 F.2d at 80 (citation omitted)

(quotation marks omitted).

### d.  TRAC Factors Three and Five

As to TRAC factors three and five—the delay's impact on "human health and welfare"

and the "interests prejudiced by delay"—Azeez has the upper hand.  TRAC, 750 F.2d at 80.  The

complaint alleges that the delay has "caused significant personal, financial, and emotional

hardship" for his family because his thirteen-year-old son who lives in the United States "has

[Langerhans cell histiocytosis,] needs constant care at home during the course of his 12-month

treatment," and "will need to remain homebound for an additional year after his treatment is

completed."  Compl. ¶¶ 6, 8.  He further asserts that he and his wife need his parents' support to

care for their son and have faced emotional and financial hardship without that support.  Id. ¶¶ 8–

10.  These allegations plausibly allege that the delay has negatively affected Azeez and his

family, including their health and welfare.  "[T]he nature of [his] interests and the prejudice to

those interests from delay in processing" therefore weighs in Azeez's favor.  Tate, 513 F. Supp. 3d at 150.  The government's contention that benefits to Azeez would only direct resources away from others, Mot. Dismiss at 21, goes to the fourth factor rather than factors three and five.

* * *

Taking each of the TRAC factors into consideration, the Court finds that the complaint does not plausibly allege an unreasonable delay.  Though the Court is sympathetic to the difficulties faced by Azeez's family as a result of the delay and acknowledges that two of the factors weigh in his favor, "the Court is also mindful that 'many others' face similarly difficult circumstances as they await adjudication of their visa applications."  Mohammad v. Blinken, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (quoting Palakuru v. Renaud, 521 F. Supp. 3d 46, 53 (D.D.C. 2021)).  As a result, these considerations "are not enough to overcome the other factors that weigh strongly in the Government's favor."  Palakuru, 521 F. Supp. at 53.

### 5.  Due Process Claims

Finally, the government moves to dismiss Count 3 of the complaint, which alleges that Azeez has a "statutorily created entitlement to adjudication of his parents' visa applications," and that the defendants' delay "violates [his] substantive and procedural due process rights protected by the Fifth Amendment of the Constitution."  Compl. ¶¶ 38, 40.  Azeez fails to state a claim under either a substantive or procedural due process analysis.

To succeed on a substantive due process claim, a plaintiff must show "violation of a fundamental right 'deeply rooted in this Nation's history.'"  Mahmood, 2021 WL 5998385, at *9 (quoting Hamal v. U.S. Dep't of Homeland Sec., No. 19-CV-2534 (RC), 2020 WL 2934954, at *4 n.3 (D.D.C. June 3, 2020)).  To succeed on a procedural due process claim, a plaintiff must show that an official deprived him "of a liberty or property interest without providing appropriate

procedural protections." <u>Atherton v. D.C. Off. of the Mayor</u>, 567 F.3d 672, 689 (D.C. Cir. 2009).  "Under either theory, a plaintiff must allege [he or] she 'has been deprived of a fundamental right or liberty or property interest.'" <u>Akrayi</u>, 2023 WL 2424600, at *6 (quoting <u>Meyou v. U.S. Dep't of State</u>, No. 21-CV-2806 (JDB), 2022 WL 1556344, at *5 (D.D.C. May 17, 2022)).  But as courts in this district have routinely held, the INA does not create a constitutionally protected property interest in an immigrant visa.  <u>E.g.</u>, <u>Mahmood</u>, 2021 WL 5998385, at *10.  Nor does Azeez have a constitutionally protected liberty interest in his parents' visas.  <u>See</u> <u>Ghadami v. U.S. Dep't of Homeland Sec.</u>, No. 19-CV-397 (ABJ), 2020 WL 1308376, at *11 (D.D.C. Mar. 19, 2020).  As Azeez has not pointed to any constitutionally protected interest at stake, the Court must dismiss Count 3.

## IV.    Conclusion

For these reasons, the Court will dismiss the complaint and the case in a separate order that accompanies this Memorandum Opinion.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>August 23, 2024</u>